IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ERYN L. SEIFERT and ROBERT L. §
GRIBBIN, §
§
Plaintiffs, §
§
v. §               Civil Action No. 3:22-CV-1360-E
§
UNITED BUILT HOMES, LLC, §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Defendant United Built Homes, LLC's

("Defendant" or "UBH") Motion to Compel Arbitration and Plea in Abatement (the "Motion to

Compel Arbitration"), (ECF No. 18); and (2) Plaintiffs Eryn Seifert and Robert Gribbin's

(collectively, "Plaintiffs") Motion to Compel Discovery (the "Motion to Compel Discovery"),

(ECF No. 22). Having considered the motions, the responses, the relevant portions of the record,

and the relevant law, the Court hereby: (1) **GRANTS** the Motion to Compel Arbitration;

(2) **STAYS** this case pending the resolution of arbitration; and (3) **FINDS AS MOOT** the Motion

to Compel Discovery.

### I.  BACKGROUND

This case arises from a dispute involving a home construction contract.[1] In December 2020,

Plaintiffs entered a "Home Building Agreement" (the "Construction Contract") with Defendant

for the construction of a home on property located in Kaufman, Texas. (ECF No. 1-6, ¶ 9).

Plaintiffs agreed to pay Defendant $273,810.00 for the construction of the home. Plaintiffs and a

---

[1] The factual background is taken from Plaintiffs' State Court Petition. (ECF No. 1-6).

sales manager for Defendant signed the Construction Contract on January 13, 2021. (*See* ECF 1-6, pgs. 11, 23). The Construction Contract contains an arbitration provision, which states:

> **ALL DISPUTES, INCLUDING ANY DISAGREEMENT, ACTION, CAUSE OF ACTION, LAWSUIT, CLAIM, COUNTERCLAIM, OR CONTROVERSY OF ANY KIND BETWEEN OR AMONG US, OR OUR ASSIGNS OR PRIVIES, INCLUDING BUT NOT LIMITED TO DISPUTES ARISING FROM THIS AGREEMENT, AND WHICH ARE NOT RESOLVED BY NEGOTIATIONS OR MEDIATION, SHALL BE SUBMITTED TO THE AMERICAN ARBITRATION ASSOCIATION (AAA) FOR BINDING ARBITRATION AND FULL AND FINAL RESOLUTION IN ACCORDANCE WITH THE AAA HOME CONSTRUCTION ARBITRATION RULES. WE WILL EACH EQUALLY PAY ONE-HALF OF THE COSTS OF ARBITRATION, AND SEPARATELY PAY OUR OWN EXPENSES, INCLUDING ATTORNEY FEES, EXPERT WITNESS OR CONSULTANT FEES, AND RELATED COSTS. WE ALSO BOTH AGREE THAT ANY ARBITRATION PROCEEDING WILL BE PLACED ON THE "FAST-TRACK" PROCEDURES FOR FASTER RESOLUTION, WHERE FEASIBLE AND ALLOWED BY THE APPLICABLE RULES.**
>
> **THIS ARBITRATION PROVISION APPLIES TO ANY DISPUTE, DISAGREEMENT, ACTION, CAUSE OF ACTION, LAWSUIT, CLAIM, COUNTERCLAIM, OR CONTROVERSY OF ANY KIND BETWEEN OR AMONG US, OR OUR ASSIGNS OR PRIVIES. ARISING AT ANY TIME AFTER SIGNING THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THOSE ARISING FROM:** *(1)* **THE NEGOTIATIONS FOR, EXECUTION OF, COMPLIANCE WITH, INTERPRETATION OF, OR ANY BREACH OF THE TERMS OF THE AGREEMENT, OR ANY RELATED CONTRACTUAL DUTIES OR DOCUMENTS, OR FOUNDED IN ANY CONTRACT OR WARRANTY CLAIM, INCLUDING CLAIMS BASED UPON THE VALIDITY OR ENFORCEMENT OF THIS AGREEMENT OR THIS MEDIATION AND ARBITRATION CLAUSE;** *(2)* **CHANGE ORDERS, OR OTHER SUBSEQUENT MODIFICATIONS OR AMENDMENTS OF THE AGREEMENT;** *(3)* **TRADE PRACTICE OR DECEPTIVE TRADE PRACTICE CLAIMS;** *(4)* **FRAUD OR MISREPRESENTATION, INCLUDING CONSTRUCTIVE FRAUD, AND INCLUDING BUT NOT LIMITED TO ALL CLAIMS RELATING TO A FAILURE TO DISCLOSE INFORMATION, OR FRAUD IN THE INDUCEMENT;** *(5)* **ANY CLAIM FOR BREACH OF EXPRESS, IMPLIED, WRITTEN OR VERBAL WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF GOOD FAITH, FAIR DEALING, COMMERCIAL REASONABLENESS, HABITABILITY, GOOD AND WORKMANLIKE CONSTRUCTION, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE;** *(6)* **ANY DUTY IMPOSED BY FEDERAL, STATE, OR LOCAL CODE, LAW, STATUTE, REGULATION, CASE LAW**

**OR COMMON LAW, NOW EXISTING OR LATER ARISING OR ENACTED;** *(7)* **VIOLATIONS OF ANY BUILDING CODES OR ZONING LAWS OR PERFORMANCE STANDARDS;** *(8)* **ANY CONSTRUCTION DEFECT;** *(9)* **ANY TORT CLAIM, INCLUDING BUT NOT LIMITED TO ALL CLAIMS FOR NEGLIGENCE, RECKLESS OR INTENTIONAL CONDUCT, PERSONAL INJURY, PRODUCTS LIABILITY, BREACH OF FIDUCIARY DUTY, CONVERSION, FORCIBLE ENTRY, TRESPASS, DURESS, INTERFERENCE, OR ANY OTHER TORT, AND INCLUDING ALL INTENTIONAL TORTS;** *(10)* **THE LOCATION OR PLACEMENT OF THE HOME;** *(11)* **NEGLIGENT OR IMPROPER HIRING OR SUPERVISION OF EMPLOYEES:** *(12)* **NEGLIGENT OR IMPROPER RETENTION OR SUPERVISION OF CONTRACTORS;** *(13)* **NEGLIGENT OR IMPROPER BUILDING OR CONSTRUCTION PROCEDURES;** *(14)* **STRICT LIABILITY;** *(15)* **DEFECTIVE BUILDING MATERIALS OR PROCESSES;** *(16)* **VIOLATION OF ANY CONTRACTUAL OR LEGAL DEBT COLLECTION, OR DEBT ENFORCEMENT PROCEDURE, OR ANY CLAIMS ARISING IN THE COURSE OF DEBT COLLECTION, DEBT ENFORCEMENT, OR OTHER ENFORCEMENT PROCEDURES,** *(17)* **ANY MOLD, BACTERIA, INSECT, RODENT, PEST OR OTHER INFESTATION CLAIMS, OR CLAIMS ARISING IN ANY MANNER FROM ANY DAMAGES OR INJURIES CAUSED BY OR RESULTING FROM SUCH INFESTATION,** *(18*) **CLAIMS ARISING FROM CREDIT REPORTING ACTIVITIES, AND** *(19)* **ANY AND ALL OTHER CLAIMS, EXCEPTING ONLY CLAIMS THAT PURSUANT TO FEDERAL LAW CANNOT BE BOUND TO ARBITRATION.**

**IF EITHER YOU OR UBH FILE OR COMMENCE ANY ACTION ARISING FROM THIS AGREEMENT OR TRANSACTION, IN A COURT OF LAW OR EQUITY, OR EXERCISE SELF-HELP RIGHTS, INCLUDING REPOSSESSION, NON-JUDICIAL OR JUDICIAL FORECLOSURE, EVICTION, OR OTHER SUCH RIGHTS, SUCH ACTION SHALL** *NOT* **CONSTITUTE A WAIVER OF THESE MEDIATION OR ARBITRATION PROVISIONS. NO ACTION BY ANY PARTY CAN ALONE CONSTITUTE A WAIVER OF ARBITRATION. ONLY A WRITTEN AND SIGNED CONSENSUAL WAIVER BY ALL PARTIES WILL SUFFICE TO CONSTITUTE AN EFFECTIVE WAIVER OF THESE MEDIATION OR ARBITRATION PROVISIONS. THE PARTIES, ASSIGNS AND PRIVIES TO THIS AGREEMENT CANNOT UNILATERALLY, UNINTENTIONALLY OR VERBALLY WAIVE MEDIATION OR ARBITRATION.**

(ECF No. 1-6, pgs. 15-16) (emphasis in original). Construction began in January 2021. (ECF No.

1-6, ¶ 9). However, construction was halted in September 2021 due to what Plaintiffs allege was

"obvious substandard and defective work and materials provided by UBH." (ECF No. 1-6, ¶ 9).

On May 3, 2022, Plaintiffs filed suit against Defendant in the 86th District Court of Kaufman County, Texas (the "State Court"). (*See* ECF No. 1-6). Plaintiffs' State Court Original Petition asserts Texas state law claims for: (1) declaratory judgment providing that the Construction Contract is unconscionable and unenforceable; (2) negligence; and (3) breach of contract. (ECF No. 1-6, pgs. 4-9). Before the Original Petition was served on Defendant, Plaintiffs filed their First Amended Original Petition and Application for Declaratory Judgment (the "First Amended Petition") in State Court on May 27, 2022.[2] (ECF No. 1, pg. 3; ECF No. 1-7). Defendant was served with the First Amended Petition on or about May 31, 2022. (ECF No. 1, ¶ 5). Defendant timely removed this case to this Court by filing their Notice of Removal on June 22, 2022. (*See generally*, ECF No. 1).

On January 4, 2023, Defendant filed the Motion to Compel Arbitration, seeking to compel arbitration pursuant to the Construction Contract's arbitration provision. (ECF No. 18). Plaintiffs resist arbitration on three grounds. First, Plaintiffs contend the Construction Contract itself is unenforceable. (ECF No. 20, pgs. 7-8). Second, Plaintiffs argue that their claim for declaratory judgment falls outside the scope of the arbitration provision. (ECF No. 20, pgs. 8-9). Third, Plaintiffs argue that Defendant waived its right to seek arbitration by sending a notice of default letter to Plaintiff—alleging this letter constituted Defendant's intent to move forward with a collection process independent of any arbitration proceedings. (ECF No. 20, pgs. 9-11).

On February 6, 2023, Plaintiffs filed the Motion to Compel Discovery, seeking to compel Defendant to respond to Plaintiffs' First Request for Production and identify a corporate representative for deposition under Federal Rule of Civil Procedure 30(b)(6). (ECF No. 22). Both Parties have briefed the Motion to Compel Arbitration and the Motion to Compel Discovery. On

---

[2] The Court notes that the First Amended Petition appears to be identical to the Original Petition. (*See generally* ECF Nos. 1-6, 1-7).

March 30, 2023, the Court issued an Order, (ECF No. 35), staying this case pending resolution of the Motion to Compel Arbitration. As briefed, these motions are ripe for determination.

## II.   LEGAL STANDARD

### A.   The Federal Arbitration Act

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation—whether the parties entered into *any arbitration agreement at all. Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Kubala*, 830 F.3d at 201 (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law

principles that govern the formation of contracts.").

Courts apply "the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073–74 & n. 5 (5th Cir.2002)). In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

## B.      Delegation Clauses

When an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

Thus, when an arbitration agreement contains a delegation clause, "the court's analysis is limited." *Kubala*, 830 F.3d at 202. As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala*, 830 F.3d at 202 (emphasis added).[3] The Fifth Circuit has further explained that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted); *see, e.g.*, *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (discussing the same).

## III.   ANALYSIS

### A.   The Motion to Compel Arbitration is Granted

The Court concludes that the Parties entered into an agreement to arbitrate, which delegates threshold questions of arbitrability to the arbitrator. As such, the Court grants the Motion to Compel Arbitration and stays this case pending the resolution of arbitration. Because the Court is staying this case, the Court finds as moot the Motion to Compel Discovery.

#### 1.      The Parties formed an agreement to arbitrate.

"When a party seeks to compel arbitration based on a contract, the first, and perhaps the most obvious, question for the court is whether there is a contract between the parties at all." *Arnold*, 890 F.3d at 550 (citing *Kubala*, 830 F.3d at 201-02). "In conducting this inquiry, [courts] distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Id.* (citing *Rent-A-Center*, 561 U.S. at 70 n. 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 1 (2006)). Whether or not the parties formed a contract—and thus formed an agreement to arbitrate—is governed by state contract law. *Kubala*, 830 F.3d at 201.[4]

---

[3] In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between [(i)] 'validity' or 'enforceability' challenges and [(ii)] 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

[4] The Court notes that the Construction Contract has a choice-of-law provision selecting Louisiana law to govern. (ECF No. 1-6, pg. 15). However, the Parties have not raised or briefed the choice-of-law issue and have relied exclusively on Texas law in their respective arguments. Because neither party has raised the choice-of-law issue or

---

Under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See In re JP Morgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019). If the party seeking to compel arbitration establishes an existence of an arbitration agreement, the burden shifts to the party opposing arbitration to show why the agreement should not be enforced. *In re Sands Bros. & Co.*, 206 S.W.3d 127, 130 (Tex. App.—Dallas 2006, no pet.); *see Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297, 301 (5th Cir. 2004).

"Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (internal quotation marks omitted) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "Evidence of mutual assent in written contract generally consists of signatures of both parties and delivery with intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). Additionally, a valid contract requires consideration. *In re Capco*, 669 F.3d at 280.

Defendant has established all of the elements of contract formation. In exchange for $732,810.00 in consideration, Defendant offered to build Plaintiffs a home. Plaintiffs accepted the offer, as evidenced by: (1) their initials at the beginning of each section of the Construction

---

objected to the application of Texas law, the Court will apply Texas contract law in determining whether an agreement to arbitrate has been formed and pretermit any consideration of choice-of-law issues. *See Kalenga v. Irving Holdings, Inc.*, No. 3:19-cv-1969-S, 2020 WL 7496208, at *5 (N.D. Tex. Dec. 20, 2020) ("When parties fail to raise choice-of-law issues, the Court need not raise the issue *sua sponte* and the parties are deemed to have acquiesced to the law of the forum.") (citing *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, No. Civ. SA03CA305FB, 2005 WL 2708811, at *6 (W.D. Tex. June 3, 2005) (collecting cases)); *see also, e.g.*, *Emps. Ins. Of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1430 n. 8 (5th Cir. 1992) (discussing the same as an "ignored" issue).

Contract; (2) their initials at the bottom of each page of the Construction Contract; and (3) their signature on the final page of the Construction Contract. (ECF No. 1-6, pgs. 11-22). Defendant also manifested intent to be bound by the Construction Contract, as evidenced by its representative's signature on the contract's final page. (ECF No. 1-6, pg. 22). Thus, the Court must conclude that the first step of the arbitration analysis has been satisfied—the parties formed an agreement to arbitrate by entering the Construction Contract and, consequently, agreeing to the arbitration provision therein. *See Kubala*, 830 F.3d at 201.

Plaintiffs do not contest the existence of the Construction Contract. (*See* ECF No. 20, pg. 4). ("To be clear, it is not Plaintiffs [(sic)] contention that an agreement for UBH to build did not exist; just that this Contract as written is unenforceable."). Instead, Plaintiffs resist arbitration on the grounds that the Construction Contract is unconscionable. (ECF No. 20, pg. 7). However, under Texas law, unconscionability challenges are a matter of *enforceability*, not contract *formation*. *See* TEX. BUS. & COMM. CODE § 2.302(a) (permitting a court to refuse to *enforce* a contract based on unconscionability); *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396 (5th Cir. 2019) (plaintiff's unconscionability argument did not "relate to whether an agreement to arbitrate was formed [but instead] call[ed] into question the validity of the contract as a whole"); *Ridge Natural Res., L.L.C. v. Double Eagle Realty, L.P.*, 564 S.W.3d 105, 129 (Tex. App.—El Paso 2018, no pet.) (unconscionability arguments "represent affirmative defenses against the enforceability of a preemptively formed contract") (citing *In re FirstMeritBank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding)); *see also Arnold*, 890 F.3d at 551 (plaintiff's argument that an arbitration provision was illusory, and therefore unenforceable, was "properly considered a validity challenge rather than a formation challenge"). Thus, Plaintiffs' unconscionability argument is not relevant to the first step of the arbitration inquiry—whether the parties entered into *any arbitration*

*agreement at all. Kubala*, 830 at 201. Moreover, for the reasons discussed below, the question of whether the Construction Contract as a whole is unenforceable is a question for the arbitrator, not the Court, to decide.

> 2.    *The Construction Contract's arbitration provision contains a valid delegation clause.*

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold*, 890 F.3d at 551 (citing *Rent-A-Center*, 561 U.S. at 68-70). "However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Id.* at 551-52 (citing *First Options*, 514 U.S. 944-45). Parties may "provide such clear and unmistakable evidence of their intent to delegate these issues . . . by expressly incorporating rules empowering the arbitrator to decide substantive arbitrability." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (alterations omitted) (citation and internal quotations omitted). Here, the parties have done so by expressly incorporating the American Arbitration Association's Home Construction Arbitration Rules.

The Construction Contract's arbitration provision states that "[a]ll disputes, including any disagreement, action, cause of action, lawsuit, claim, counterclaim, or controversy . . . shall be submitted to the American Arbitration Association (AAA) for binding arbitration and full and final resolution *in accordance with the AAA Home Construction Arbitration Rules.*" (ECF No. 1-6, pg. 15) (emphasis added). The Fifth Circuit has repeatedly held that express incorporation of the AAA rules providing that the arbitrator will determine questions of arbitrability constitutes clear and unmistakable evidence of intent to delegate gateway arbitration questions.[5] *See, e.g., Halliburton*

---

[5] Here, the relevant AAA arbitration rules state that "[t]he arbitrator shall have the power to rule on his or her jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AMERICAN ARBITRATION ASSOCIATION, *Home*

*Energy Servs.*, 921 F.3d at 537; *Edwards*, 888 F.3d at 746; *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). Thus, the Court concludes that the Construction Contract clearly and unmistakably delegates questions of arbitrability to the arbitrator.[6]

> 3.      *Plaintiffs' arguments in opposition to arbitration are unavailing.*

Having concluded that (1) the Parties formed an agreement to arbitrate and (2) the arbitration agreement contains a delegation clause, the Court turns to Plaintiffs' arguments in opposition to arbitration. Plaintiffs oppose arbitration on three grounds: (1) the Construction Contract as a whole is unconscionable and, therefore, unenforceable; (2) the arbitration provision does not specifically encompass Plaintiffs' challenge to the enforceability of the Construction Contract; and (3) Defendant has waived its right to seek arbitration. (ECF No. 20, pg. 7-9). The Court concludes that each argument is unavailing.

> (i)      Enforceability and Arbitrability

Plaintiffs' first argument in opposition to arbitration is a challenge to the validity or enforceability of the Construction Contract as a whole; their second argument goes to the arbitrability of their claim for declaratory judgment. As discussed above and for the reasons enumerated hereunder, Plaintiffs' arguments fail because (1) challenges to the enforceability of a contract as a whole are not relevant to whether the court may enforce an arbitration provision contained within that contract and (2) the Construction Contract's arbitration provision delegates

---

*Construction Arbitration Rules and Mediation Procedures*, ARB-11(a), pg. 17 (rules amended and effective August 1, 2018) https://www.adr.org/sites/default/files/Home_Construction_Arbitration_Rules_and_Mediation_Procedures.pdf.

[6] In reaching this conclusion, the Court recognizes that Defendant did not raise the matter of the delegation clause in the Motion to Compel Arbitration. This, however, does not prevent the Court from relying on the existence of the clause in its ruling. "When an issue or a claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

gateway arbitration issues to the arbitrator.

With respect to their argument that the Construction Contract is unenforceable, Plaintiffs

specifically contend:

> Under Texas law, an unconscionable contract is unenforceable. *In re Poly-Am, L.P.* 262 S.W.3d 337, 348 (Tex. 2008). Whether a contract is unconscionable at the time it is formed is a question of law. *Id.* at 349; *see also Chubb Lloyds Ins. Co. of Texas v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 578 (Tex. App.—Dallas 2010, no pet.)

> It is noteworthy that under federal law, it is ". . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *See Granite Rock Company v. International Brotherhood of Teamsters*, 130 S.Ct. 2847, 2855, 2856 (2010) [(]*citing First Options of Chicago, Inc. v. Kaplan*, 115 S.Ct. 1920 (1995)[).] Following this reasoning, the question as to whether the contract as a whole is unconscionable and of no effect should also be [a] question for the Court to decide, not the arbitrator.

(ECF No. 20, pg. 7).

Plaintiffs contend that the Construction Contract is unconscionable by pointing to provisions that are mostly unrelated to contract's arbitration provision. Specifically, Plaintiffs point to provisions of the Construction contract that: (1) limit damages to actual damages; (2) requires a party that hires experts or inspectors to bear such costs; (3) requires the Parties to bear their own attorneys' fees; (4) requires the Parties to split the cost of arbitration equally; (5) disclaim all warranties except for the Louisiana New Home Warranty Act.[7] The first, second, third, and fourth arguments are unrelated to the arbitration provision and thus are not relevant to whether the Court may compel arbitration. *See Rent-A-Center*, 561 U.S. at 70-71. In *Rent-A-Center*, the Supreme Court explained:

> There are two types of validity challenges under § 2: "**One type challenges specifically the validity of the agreement to arbitrate,**" and "**[t]he other**

---

[7] Plaintiffs assert that, even though the Construction Contract provides that Louisiana law governs, it "references the application of the Residential Construction and Liability Act under chapter 27 of Texas Property Code." (ECF No. 20, pg. 5). Plaintiffs argue that the provision waiving warranties unlawfully waives the application of the Texas Deceptive Trade Practices Act. (ECF No. 20, pg. 5).

**challenges the contract as a whole**, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S., at 444, 126 S.Ct. 1204. In a line of cases neither party has asked us to overrule, we held that **only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable**. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Buckeye*, *supra*, at 444–446, 126 S.Ct. 1204; *Preston v. Ferrer*, 552 U.S. 346, 353–354, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). **That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate**.

561 U.S. at 70-71 (emphasis added) (footnote omitted). Thus, Plaintiffs' argument that the Construction Contract is unenforceable because of provisions unrelated to the arbitration provision does not prevent the Court from enforcing the arbitration agreement formed by the parties.

Moreover, Plaintiffs' unenforceability argument relating to the arbitration provision's cost-splitting arrangement has been delegated to the arbitrator. As discussed above, when an arbitration agreement contains a delegation clause, courts will "consider the clause to be valid and compel arbitration" unless there is a challenge to the delegation clause itself. *Edwards*, 888 F.3d at 738. Otherwise, "[c]hallenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Id.* Plaintiffs' arguments do not touch on the delegation clause; thus, they have been delegated to the arbitrator.

Additionally, Plaintiffs' arbitrability argument has been delegated to the arbitrator. Plaintiffs argue that their claim for declaratory judgment falls outside the scope of the arbitration provision. (ECF No. 20, pg. 9). By incorporating the AAA's Home Construction Arbitration Rules, the Parties agreed that the arbitrator would determine gateway questions of arbitrability. As the Supreme Court has explained, if an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White*

*Sales, Inc.,* —U.S.—, 139 S. Ct. 524, 530 (2019). Thus, the Court pretermits any consideration of this arbitrability issue.

(ii)    Waiver

Last, Plaintiffs argue that Defendant waived its right to seek arbitration when it sent Plaintiffs a notice of default letter demanding payment for the construction project. (ECF No. 20, pg. 9). Plaintiffs contend the notice of default letter "clearly signals UBH's intent to move forward with a collection process independent of any arbitration proceedings." (ECF No. 20, pg. 10). Plaintiffs argue that sending the notice of default constitutes a waiver of Defendant's contractual right to seek arbitration because it is inconsistent with that right. (ECF No. 20, pg. 10) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) ("A party waives its right to arbitration when he actively participates in a lawsuit or takes other action inconsistent with that right."), *abrogated by Morgan v. Sundance, Inc.*, —U.S.—, 142 S. Ct. 1708 (2022)).[8]

"Despite the strong federal policy favoring arbitration, the right to arbitration may be waived." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F.App'x. 462, 464 (5th Cir. 2004) (per curiam) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986)). In the Fifth Circuit, a party waives its right to seek arbitration by "substantially invoking the judicial process." *See Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (citations omitted). "To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).

---

[8] The Fifth Circuit in *Miller* held, in part, that "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process *to the detriment or prejudice of the other party*." *Miller*, 781 F.3d at 497 (emphasis added). The Supreme Court's decision in *Morgan v. Sundance* abrogated *Miller* insofar as "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan*, 142 S.Ct. at 1714.

The Fifth Circuit's test for waiver has also included a prejudice requirement—that is, the substantial invocation of the judicial process was required to have inflicted prejudice or detriment on the opposing party. *See Forby*, 13 F.4th at 465 (citing *Miller*, 781 F.2d at 497). However, in *Morgan v. Sundance, Inc.*, the Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." 142 S.Ct. at 1714.

A court in the Southern District of Texas has addressed the state of the Fifth Circuit's arbitration-waiver standard in the wake of *Morgan*, explaining:

> After *Morgan*, the Fifth Circuit has since remanded an arbitration-waiver case for further reconsideration in light of *Morgan* and *Forby*, *see Barnett v. Am. Express Nat'l Bank*, No. 21-60799, 2022 WL 2337391 (5th Cir. June 29, 2022), but has not elaborated on the current test for waiver. In the absence of any intervening Fifth Circuit authority dictating otherwise, the Court follows *Morgan* and concludes that the surviving test for waiver in this circuit is the remainder of Fifth Circuit's prior test: whether the party has substantially invoked the judicial process. *Cf. Morgan*, 142 S. Ct. at 1714 (describing the remaining Eighth Circuit waiver inquiry, stripped of its prejudice requirement); *De Jesus v. Gregorys Coffee Mgmt.*, LLC, No. 20-CV-6305, 2022 WL 3097883, at *7 & n.6 (E.D.N.Y. Aug. 4, 2022) (applying the remaining Second Circuit factors, minus prejudice, in determining whether waiver occurred).
>
> *Morgan* also teaches that courts may not "invent special, arbitration-preferring procedural rules." 142 S. Ct. at 1713 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Prior cases in our circuit have applied a "strong presumption" against a finding of waiver, attributed to the "policy favoring arbitration." *E.g., Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 542 (5th Cir. 2016); *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 421-22 (5th Cir. 2014). Courts in this circuit have consequently stated that a party asserting waiver carries a "heavy burden of proof." *E.g., Forby*, 15 F.4th at 465 (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). But after *Morgan*, any presumption against a finding of waiver, or assignment of a "heavy burden of proof" to a party asserting waiver of an arbitration agreement, might now be suspect, because such presumptions or proof standards appear to be precisely what *Morgan* forbids: special procedural rules favoring arbitration. To be sure, a party attempting to demonstrate that its opponent has substantially invoked the judicial process does face a burden, but the Court perceives that this burden is no heavier than that required to prove waiver of any other type of contractual right, and that the measuring scale is no longer weighted on one side with a presumption against a finding of waiver. "[T]he policy

[favoring arbitration] is to make arbitration agreements as enforceable as other contracts, but not more so." *Morgan*, 142 S. Ct. at 1713.

*Vollmering v. Assaggio Honolulu*, LLC, No. 2:22-CV-00002, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022), *rec. adopted*, No. 2:22-CV-00002, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022). The Court agrees with the reasoning in *Vollmering* and concludes that the "surviving test for waiver in this circuit is the remainder of Fifth Circuit's prior test: whether the party has substantially invoked the judicial process." *Id.*

The Court concludes that Defendant has not waived its right to seek arbitration, regardless of whether an anti-waiver presumption is applied. Defendant has not substantially invoked the judicial process or engaged in an overt act evincing "a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Ams.*, 575 F.3d at 480. Under these circumstances, the court finds and concludes that sending a notice of default letter does not establish waiver of arbitration. *See, e.g.*, *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (explaining that "Connecticut General did not initiate any litigation action in this case; it merely defended itself against Gulf Guaranty's court claims" and concluding that "Connecticut General did not waive its right to arbitrate its dispute with Gulf Guaranty"); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995) (concluding there was no waiver of right to arbitrate despite removing action to federal court, filing motion to dismiss, filing motion to stay proceedings, answering complaint, asserting counterclaim, and engaging in discovery); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-78 (5th Cir. 1991) (finding no waiver despite serving interrogatories, requesting production of documents, attending pretrial conference, and waiting thirteen months before seeking to compel arbitration); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc.*, 427 F.2d 924, 927-29 (5th Cir. 1970) (concluding there was no waiver despite filing answer denying liability, filing counterclaims, attempting to implead

parties, and allowing depositions before demanding arbitration).

For the reasons discussed above, the Court concludes the Parties formed an arbitration agreement delegating threshold questions of arbitrability to the arbitrator. Accordingly, Plaintiffs arguments as to (1) the enforceability of the Construction Contract as a whole and (2) the arbitrability of Plaintiffs' claim for declaratory judgment have been delegated to the arbitrator. Moreover, the Court concludes that Defendant has not waived its contractual right to seek arbitration. Under these circumstances, the Court GRANTS Defendant's Motion to Compel Arbitration.

### 4. This Case is Stayed Pending Resolution of Arbitration

The Federal Arbitration Act permits staying a case pending arbitration. *See* 9 U.S.C. § 3. "[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Accordingly, the Court hereby **STAYS** this case pending resolution of arbitration proceedings between the Parties.

### B. The Motion to Compel Discovery is Moot.

Because the Court grants Defendant's Motion to Compel Arbitration and this case has been stayed pending resolution of arbitration, the Court hereby finds as **MOOT** Plaintiff's Motion to Compel Discovery. (ECF No. 22).

## V.   CONCLUSION

For the reasons discussed above the Court: (1) **GRANTS** Defendant's Motion to Compel Arbitration, (ECF No. 20); (2) **STAYS** this case pending resolution of arbitration; and (3) **FINDS AS MOOT** Plaintiff's Motion to Compel Discovery, (ECF No. 22). Additionally, the Parties are hereby **ORDERED** to submit a joint status report to the Court no later than 90 days from the date of this memorandum opinion and order updating the Court as to the status of the arbitration proceedings. The Parties shall file a joint status report every 90 days thereafter until arbitration has been completed.

**SO ORDERED:** July 27, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE